UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ABDIRAHMAN MOHAMADOW
IBRAHIM,

Petitioner,

v.

MARKWAYNE MULLIN, *et al.*,

Respondents.

Case No. C26-1467-SKV

ORDER GRANTING IN PART
PETITION FOR WRIT OF HABEAS
CORPUS

Petitioner Abdirahman Mohamadow Ibrahim is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington.  He filed, through counsel, a petition for writ of habeas corpus under 28 U.S.C. § 2241, seeking release from immigration detention.  *See* Dkt. 1.  Government Respondents filed a timely return (Dkt. 5), along with sworn declarations from U.S. Department of Homeland Security ("DHS") Deportation Officer Sooseon Jeon (Dkt. 6) ("Jeon Decl.") and their counsel Alixandria Morris (Dkt. 7) ("Morris Decl.").  Petitioner filed a timely traverse in reply (Dkt. 8).

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 1

The Court, having reviewed the parties' submissions and the governing law, GRANTS the petition (Dkt. 1) in part and ORDERS that Petitioner be released from immigration detention within twenty-four hours. Remaining claims and requests for relief are addressed below.

## I.     BACKGROUND

Petitioner is a native and citizen of Somalia who first entered the United States on or around May 2, 2023, when he was stopped by U.S. Customs and Border Protection ("CBP") near San Ysidro, California. Dkt. 1, ¶ 10; Jeon Decl., ¶ 3. Petitioner was issued a Notice to Appear ("NTA"), which charged him with inadmissibility under the Immigration and Nationality Act ("INA") and ordered him to attend an immigration hearing on June 27, 2023, in Seattle, Washington. Jeon Decl., ¶ 4. Thereafter he was released on an Order of Recognizance ("OREC"), which required Petitioner to comply with certain conditions, including, relevant here, a requirement that he first obtain permission from ICE before changing his address. *Id.*; *see* Morris Decl., ¶ 2, Ex. 3.

On September 12, 2023, Petitioner notified the Seattle immigration court that he changed his address to El Centro, California, and his immigration proceedings were transferred to the Imperial, California immigration court. Jeon Decl., ¶ 5. Petitioner also provided his new address to ICE's Enforcement and Removal Operations ("ERO") office. *Id.* On March 11, 2024, Petitioner changed his address to Gaithersburg, Maryland and notified the California immigration court of the change. *Id.* ¶ 6. Officer Jeon states that Petitioner did not, however, provide his Maryland address to ERO. *Id.*

On December 22, 2025, ICE arrested Petitioner in Tukwila, Washington during a traffic stop. *Id.* ¶ 7; Dkt. 1, ¶ 4. Officer Jeon states that Petitioner was "identified by ICE officers, who were tasked with locating [noncitizens] considered to be fugitives" and that Petitioner was

"detained after a traffic stop pursuant to an arrest warrant."[1]  Jeon Decl., ¶ 7.  ICE thereafter revoked Petitioner's OREC and transferred him to the NWIPC, where he has been detained since.  *Id.*  Neither Officer Jeon, nor Respondents, explain the basis for revoking Petitioner's OREC.[2]

On February 9, 2026, Petitioner remotely attended an immigration court hearing conducted in Hyattsville, Maryland, at which the immigration judge ordered Petitioner removed to Somalia.  Jeon Decl., ¶ 8.  On March 11, 2026, Petitioner appealed the removal order to the Board of Immigration Appeals ("BIA"), which remains pending as of May 14, 2026.  *Id.*; *see* Dkt. 1, Ex. B.

On April 29, 2026, Petitioner filed the instant petition for writ of habeas corpus, challenging his redetention as violative of the Administrative Procedure Act ("APA") and the Due Process Clause of the Fifth Amendment.  Dkt. 1 at 10-16.  He seeks release from immigration custody and other related relief.  *Id.* at 16-17.

## II.   LEGAL STANDARDS

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."  *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A writ of habeas

---

[1] Respondents did not include a copy of the arrest warrant as part of Petitioner's immigration file.  *See* Morris Decl., ¶ 2, Exs. 1-4.

[2] The Court observes that Respondents provided what appears to be a notice of OREC cancellation from Petitioner's immigration file with their exhibits.  *See* Morris Decl., ¶ 2, Ex. 4.  That notice references a separate "Form I-213," which purportedly provides the reason for cancelling Petitioner's OREC.  Respondents did not include the Form I-213 with their exhibits.

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 3

corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest."  *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001).  Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention.  *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

### III.   DISCUSSION

Petitioner's claims under the APA assert that his arrest and subsequent revocation of conditional release were both an abuse of discretion and not in accordance with the law.  Dkt. 1 at 10-12.  His third claim challenges his redetention on procedural due process grounds and asserts that, under *Mathews*,[3] the circumstances under which the Government revoked his liberty interest in remaining free violated the Fifth Amendment.  *Id.* at 13-16.  Respondents contend that Petitioner's redetention complied with due process because he had a reduced liberty interest from an OREC violation.  Dkt. 5 at 10.  Respondents separately assert that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b).  *See id.* at 8.  Finally, Respondents contend that this Court lacks subject matter jurisdiction over Petitioner's claims arising under the APA.  *Id.* at 11-12.

The Court need not reach Petitioner's APA claims because, as explained below, *Mathews* compels Petitioner's release from detention.

### A.   Due Process

The Fifth Amendment forbids the government from depriving any person of "life, liberty, or property, without due process of law."  U.S. Const. amend. V.  "The fundamental requirement

---

[3] *Mathews v. Eldridge*, 424 U.S. 319 (1976).

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 4

of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 522 (1965)). Due process is "flexible and calls for such procedural protections as the particular situation demands." *Id.* at 334 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). It "applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693.

The Supreme Court, in *Mathews*, established a three-part test for determining whether a particular government action comports with due process. The *Mathews* test balances the following factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.

In *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1211 (9th Cir. 2022), the Ninth Circuit assumed without deciding that the *Mathews* test applies in the immigration detention context and courts in this District employ the framework in cases challenging redetention under circumstances like Petitioner's here. *See E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321 n.4 (W.D. Wash. 2025) (collecting cases employing the *Mathews* factors in similar immigration contexts). Here, the parties agree that *Mathews* provides the appropriate framework to assess Petitioner's redetention but disagree on whether it warrants relief. *See* Dkts. 1 at 16, 5 at 9-11. Thus, the Court will apply the *Mathews* framework to Petitioner's detention.

//

//

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 5

   *1.*  *Private Interest*

Having spent approximately fifteen months living in the United States after ICE allowed his conditional release, Petitioner has a liberty interest in remaining free from immigration detention.  The Supreme Court has recognized that "[f]reedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action."  *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992); *see also Hamdi*, 542 U.S. at 529 (the interest in not being detained "is the most elemental of liberty interests").  This interest exists even when release is conditional.  *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (collecting cases).

Respondents acknowledge the "weighty liberty interests implicated by the Government's detention of noncitizens."  Dkt. 5 at 9 (quoting *Reyes v. King*, 2021 WL 3727614, at *11 (S.D.N.Y. Aug. 20, 2021)).  Nevertheless, Respondents cite to *Mathews v. Diaz*, 426 U.S. 67, 79-80 (1976) and *Denmore v. Kim*, 538 U.S. 510 (2003), to support their argument that noncitizens have a lessened liberty interest compared to U.S. citizens, particularly when the liberty interest has been conditionally granted.  *Id.* at 10.  Accordingly, Respondents conclude, Petitioner's redetention was justified because he had "a lessened liberty interest due to his violations of conditions of release."  *Id.*

The Court does not find that either *Mathews v. Diaz* or *Denmore* support Respondents' argument that a noncitizen's liberty interest is reduced (and thus, owed less procedural protection) merely because release is conditional.  Moreover, Respondents' focus on Petitioner's alleged noncompliance with his OREC is misplaced at this stage in the *Mathews* analysis, which is focused not on the Government's interest or the reason for its action, but rather on the private interest that will be impacted by it.  *Mathews*, 424 U.S. at 335.  When Petitioner was released

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 6

after his initial detention, he took with him a liberty interest entitled to the full protection of the due process clause.  And Petitioner's actions since his release show that he reasonably relied on that interest.  He filed for asylum, obtained employment authorization, and sought employment in California and Maryland.  Dkt. 1 at 2.  These actions were only made possible by Petitioner's freedom, the deprivation of which was entitled to the protection of due process.

Accordingly, the Court rejects Respondents' argument that Petitioner's conditional release, or his alleged noncompliance here, without more, diminished his liberty interest in remaining free or otherwise dispensed with the requirements of due process.  *See Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017) ("While the temporary detention of noncitizens may sometimes be justified by concerns about public safety or flight risk, the government's discretion to incarcerate noncitizens is always constrained by the requirements of due process[.]")  The Court therefore finds that Petitioner has a strong private interest in his continued liberty and, thus, the first *Mathews* factor weighs in his favor.

2.      *The Risk of Erroneous Deprivation and the Value of Additional Safeguards*

The risk of erroneous deprivation weighs in favor of Petitioner where, as here, the only articulated basis for his detention after having lived in the United States for a significant amount of time is a vague allegation that he violated his OREC and Respondents' oft-rejected application of § 1225(b).  Dkt. 5 at 7-9, 10.  Petitioner asserts the risk of error was high because ICE arrested him in violation of its regulations and without an individualized determination of flight risk or danger to the community.  Dkt. 1 at 15.  Respondents do not acknowledge or respond to Petitioner's claim that they failed to comply with federal regulations when redetaining him but argue that "any pre-deprivation notice would have been impractical and motivated his flight."  Dkt. 5 at 10.

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 7

Turning to Petitioner's OREC compliance, and whether that motivated his arrest, Respondents simply assert that "ERO records indicate Petitioner did not provide his Gaithersburg, Maryland address to ERO." Dkt. 5 at 6. The record, however, reflects a history of compliant behavior. Petitioner had previously provided notice to both the Washington immigration court and the ERO office when he moved to California in 2023. Jeon Decl., ¶ 5. He also notified the immigration court in California when he moved to Maryland in 2024. *Id.* ¶ 6. Petitioner's compliance undermines any suggestion that Petitioner's failure to notify ERO was so willful or egregious as to justify forgoing effectively any pre-deprivation process.

Further, while Petitioner's OREC noncompliance serves as Respondents' post-hoc justification here, there is little contemporaneous explanation in the record regarding ICE's decision to arrest Petitioner and whether it was motivated by his noncompliance with release conditions. Officer Jeon states that Petitioner was located by ICE officers who "were tasked with locating [noncitizens] considered to be fugitives" (Jeon Decl., ¶ 7) but does not assert that ICE was specifically targeting Petitioner, considered him to be a fugitive, or that his arrest warrant was based on his OREC compliance. The report of Petitioner's arrest merely documents that ICE "encountered [Petitioner]" during an operation. *See* Morris Decl., ¶ 2, Ex. 2. Further, Respondents here do not contend that they followed regulations, made any individualized assessment of Petitioner's risk of flight or danger to the community, or provided Petitioner with notice of the reason for his arrest prior to taking him into custody. *See generally* Dkt. 5.

When ICE released Petitioner in 2023, it did so after determining—as required by regulation—that "such release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding." 8 C.F.R. § 236.1(c)(8). Courts in this District have found that arresting and detaining noncitizens who were initially detained and

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 8

released without first reconsidering those factors poses a significant risk of erroneous deprivation. *See, e.g., E.A. T.-B.*, 795. F. Supp. 3d at 1323; *Ledesma Gonzalez v. Bostock*, 808 F. Supp. 3d 1189, 1202-03 (W.D. Wash. 2025). To the extent any of this process was provided to Petitioner or documented by ICE, such evidence is not before the Court.

As for Respondents' separate argument that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b), the Court remains unpersuaded. This Court, along with others in the District, routinely reject the argument that noncitizens under circumstances similar to Petitioner's here are "applicants for admission" who are "seeking admission" and therefore subject to detention under § 1225(b). *See, e.g., Caiza Aucatoma v. Hernandez,* No. C26-1253, 2026 WL 1265541, at *5-6 (W.D. Wash. May 8, 2026); *Rodriguez v. Bostock*, 802 F. Supp. 3d 1297, 1304 n.3 (W.D. Wash. 2025) (collecting cases).

Regardless, Petitioner's claim is that the Fifth Amendment entitled him to some amount of process before ICE arrested and detained him. Dkt. 1 at 13-16. His claim, therefore, is constitutional, not statutory. *See P.T. v. Hermosillo*, 2025 WL 3294988, at *2 n.1 (W.D. Wash. Nov. 26, 2025) ("To the extent that the Government's briefing suggests that [§] 1225(b) should be the beginning and end of the Court's inquiry, this position is emphatically rejected."); *Francois v. Wamsley*, 2025 WL 3063251, at *3 (W.D. Wash. Nov. 3, 2025) ("Any argument that ICE acted within its authority has no [effect] on a claim contending that detention violates Constitutional Due Process."). Thus, Respondents' argument that §1225(b) standing alone justifies Petitioner's arrest and continued detention, or otherwise comports with due process, is unavailing.

In sum, the limited procedures used to arrest and redetain Petitioner, the circumstances under which they arose, and the lack of contemporaneous documentation created a high risk of

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 9

erroneous deprivation of his liberty interest and there was probable value in additional safeguards.  Providing notice and an opportunity for Petitioner to challenge the factual basis for his redetention would have reduced the risk of an erroneous deprivation of his liberty interest. The second *Mathews* factor therefore weighs in Petitioner's favor.

>           3.        *Government Interest*

As to the third *Mathews* factor, Respondents identify two governmental interests, but their relationship to Petitioner's circumstances, or how they would have been undermined or jeopardized by affording Petitioner pre-deprivation process, is unclear.  First, Respondents argue that the Government has a general interest in preventing noncitizens from remaining in the United States in violation of the law. Dkt. 5 at 11.  Respondents also assert an interest in protecting immigration proceedings from unnecessary delay.  *Id.*  Neither of these interests are implicated by Petitioner's circumstances nor supported by the record.

Prior to his arrest, Petitioner was authorized, *by Respondents*, to live and work in the United States.  *See* Morris Decl., ¶ 2, Ex. 3.  It is difficult to reconcile Respondents' concern about noncitizens living in the United States with their agreement to conditionally release Petitioner in 2023.  Moreover, to the extent Respondents consider Petitioner's alleged OREC violation to be a "violation of the law," nothing in the record definitively points to that as being the motivating force behind his arrest or whether anyone in ERO ultimately found that Petitioner did, in fact, violate his OREC.  As for any unnecessary delay, Respondents do not make the connection to Petitioner.  There's no evidence in the record that Petitioner was the cause of delay and Respondents do not explain why his arrest without process advanced this interest.

Thus, on this record, any governmental interest beyond general immigration enforcement, and whether Petitioner's individualized circumstances posed a risk to that interest, is not

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 10

meaningfully articulated by Respondents, or apparent from the record. Accordingly, there is no reason to believe that providing Petitioner with notice and an opportunity to be heard prior to arresting him would have undermined any legitimate interest. The third factor also weighs in Petitioner's favor.

In sum, all three *Mathews* factors favor Petitioner and habeas relief is therefore warranted. Given the lack of lawful process at the outset of detention and the absence of exigent circumstances, release is the appropriate and constitutionally required remedy. This conclusion aligns with a broad consensus among district courts. *See*, *e.g.*, *Rojas v. Almodovar*, 2025 WL 3034183, at *8 (S.D.N.Y. Oct. 30, 2025) (holding that where "detention was invalid at its inception[,]" petitioner is "entitled to release."); *E.A. T.-B.*, 795 F. Supp. 3d at 1324; *J.Y.L.C. v. Bostock*, 2025 WL 3169865, at *2 (D. Or. Nov. 12, 2025); *Zhu v. Genalo*, 798 F. Supp. 3d 400, 415 (S.D.N.Y. 2025).

**B. Remaining Claims and Relief**

The requested relief under Petitioner's APA claims is duplicative of the relief ordered under *Mathews* above, so the Court need not reach those claims or decide whether it has jurisdiction.

Petitioner also requests this Court to declare that his detention without an individualized determination violated the Due Process Clause and that his redetention violated "statute and regulation." Dkt. 1 at 16, ¶¶ 3-4. The Court has already found that, on these facts, due process required pre-deprivation notice and a meaningful opportunity to be heard prior to depriving Petitioner of his liberty interest and that the Government's purported interest did not justify the circumstances of his redetention. To the extent this request seeks relief beyond the Court's findings articulated above, such as declaratory relief under the Declaratory Judgment Act,

28 U.S.C. §§ 2201-2202, Petitioner does not engage with the elements required for such relief or otherwise provide legal authority specifically addressing that relief. It is therefore denied.

Finally, Petitioner's release moots his request for an order prohibiting his transfer outside this District without adequate notice. *See* Dkt. 1 at 16, ¶ 6.

#### IV.    CONCLUSION

Based on the foregoing, this Court hereby FINDS and ORDERS as follows:

(1)    Petitioner's petition for writ of habeas corpus (Dkt. 1) is GRANTED, in part;

(2)    Petitioner shall be released from immigration detention within twenty-four (24) hours of the date of this Order, subject to reasonable conditions of release in accordance with federal law;

(3)    Respondents shall file notice with the Court within forty-eight (48) hours of the date of this Order confirming Petitioner's release from immigration detention;

(4)    All remaining requested relief is DENIED without prejudice.

Dated this 28th day of May, 2026.

S. KATE VAUGHAN
United States Magistrate Judge

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 12